UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM ZOLLINGER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:14-CV-1834 RM |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

William Zollinger, a *pro se* prisoner, is serving a 40-year sentence for possession of methamphetamine with intent to deliver and possession of marijuana. State v. Zollinger, 20D03-0412-FA-189. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE 1.) The respondent argues that the sole claim raised in the petition is procedurally defaulted. (DE 8.)

## I. FACTS

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). Mr. Zollinger must rebut this presumption with clear and convincing evidence. Id. On appeal from the denial of post-conviction relief, the Indiana Court of Appeals summarized the facts underlying Mr. Zollinger's offenses this way:

> Around 11:30 p.m. on October 25, 2004, a magistrate in Elkhart County issued a search warrant for the "residence of [Zollinger] and Tonya Hernandez, 1006 Zollinger Road, Goshen[.]" At approximately 12:45 a.m. on October 26, 2004, police officers executed the warrant by breaking down the door of the residence,

-1-

entering the home, and loudly announcing themselves. Inside, the police found Zollinger and Hernandez asleep in a bed in one bedroom and two small children asleep in a separate bedroom. The search of the premises revealed 294 grams of marijuana, approximately 159 grams of methamphetamine, a handgun on a nightstand beside the bed in which Zollinger and Hernandez had been sleeping, a box of baggies in a drawer, and a scale.

The State originally charged Zollinger with possession of a handgun without a license, possession of three or more grams of methamphetamine with intent to deliver, and possession of thirty or more grams of marijuana. However, prior to trial, the State dismissed the handgun count. In late September 2005, a jury found Zollinger guilty on the two remaining counts. On October 20, 2005, the court entered judgment of conviction and sentenced Zollinger to a forty-year term on the dealing count and a three-year term on the possession count, to be served concurrently.

Zollinger v. State, No. 20A03-0603-CR-91, memo op. at 2-3 (Ind. Ct. App. Nov. 30, 2006).

Zollinger directly appealed to this court, raising three issues. Zollinger first claimed that the evidence was insufficient to prove that he constructively possessed methamphetamine. *Id.* We rejected that contention and determined that the evidence, including the receipt of mail at the house, the presence of clothing there, and cross-examining Hernandez, was sufficient to show that Zollinger lived there. Thus, we concluded that the evidence was sufficient to support Zollinger's convictions. *Id.* at 2.

Zollinger also alleged that the trial court improperly limited his cross-examination of Hernandez. Hernandez testified that the State had not made any promises to her about sentence modification if she testified against Zollinger. *Id.* On cross-examination, Zollinger attempted to introduce a letter that Hernandez had written to him that stated:

> Ronnie seems to think that he's only getting 20 do 10. I'll tell you this if he gets less than me he fsnitched [sic]. This is his 3d time around. It's my first and I got 28 (All I got is there [sic] work for a modification) Sounds crazy, but I'm tired of sitting here. I probably am stuck here until your trial.

*Id.* Zollinger argued that the letter implied that the State had promised Hernandez a sentence modification and that the jury should have been permitted to hear that information. However, the trial court refused to admit the letter into evidence. *Id.* In affirming

the trial court's exclusion of the letter, we quoted Hernandez's testimony which revealed that she had merely hoped for a modification but had never been promised one:
> Q. And you're hoping to get a modification, aren't you?
> A. No. I mean, I would hope I get one, but, it's not guaranteed that I get one.
> Q. With respect to the statements regarding modification that came up. You indicated that you certainly hope to be modified, is that right?
> A. Ya, I hope so.
> Q. Ok. *Has the State done anything to encourage you in the hope?*
> A. *No.* A. *Ya, I was gonna-regardless, I would have been called whether it was willingly or not.*

Slip op. at 8–10 (emphasis [originals]).

We further pointed out in Zollinger's direct appeal that the State argued at Hernandez's hearing for the imposition of a lengthier term than what was actually ordered. *Id.* at 4. We also recognized other circumstances establishing that the trial court had properly excluded the letter that Zollinger had offered:

> Recognizing Hernandez's potential bias, and faced with Zollinger's request that her letter be introduced into evidence, the trial court properly arranged for examination of Hernandez outside the jury's presence. During that examination, Hernandez confirmed that the State had not offered to modify her sentence if she testified against Zollinger. *Indeed, according to Hernandez, the State had been "quite clear" that she would receive "nothing"—let alone a promise of modification—in addition for her testimony. She went on to state, "I got twenty eight years, sir. I am hoping for a modification. That is all I'm hoping for." In addition, Hernandez noted that her attorney had stated that testifying "might" help, but that "it's not a guarantee." When the jury was brought back, Hernandez reiterated that no promises were made by the State.*

*Id.* at 5 (emphasis added). In light of the above, it was determined that Hernandez's letter was not inconsistent with her testimony and it did not add anything to it. *Id.* Moreover, it was noted that the letter had the real "possibility of confusing the jury or injecting improper bias." Thus, we affirmed the trial court's exclusion of the letter. Finally, we concluded that Zollinger's forty-year sentence was appropriate. *Id.* at 8.

On April 11, 2007, Zollinger filed a petition for post-conviction relief, alleging among other things, that his trial counsel was ineffective for failing to introduce evidence that the State had promised Hernandez a sentence modification in exchange for her testimony.

Although the post-conviction court appointed counsel for Zollinger, the State public defender withdrew its appearance on December 27, 2007. Thereafter, on February 13, 2008, the post-conviction court held a telephonic conference with a deputy public defender. The deputy public defender represented that the office had difficulty finding counsel to represent Zollinger but informed the post-conviction court that Amy E. Karozos had agreed to do so, provided that no evidentiary hearing would occur earlier than one year from the date that she entered her appearance. The post-conviction court agreed not to schedule any hearing prior to that time. On March 5, 2008, the State Public Defender filed its notice of appointment of outside counsel, and Karozos filed her appearance on November 25, 2008.

On February 29, 2012, the court sua sponte scheduled Zollinger's case for an evidentiary hearing on June 7, 2012. Zollinger filed his witness and exhibit list by certified mail on May 31, 2012.

The post-conviction court conducted an evidentiary hearing on June 7, 2012. During the hearing, Zollinger presented no live testimony and proffered affidavits from Hernandez and his appellate counsel, Patricia McMath. Zollinger had provided Hernandez's affidavit to the State approximately one week before the hearing. Hernandez averred in her affidavit that the police came to visit her at the jail and told her that they would "look favorably" on a sentence modification in the future if she would testify against Zollinger. Ex. A. The State received McMath's affidavit on the morning of the hearing. The State objected to the introduction of both affidavits on the grounds that they did not timely receive them, the affidavits contained hearsay, and that cross-examination would be necessary to rebut Zollinger's contentions.

The post-conviction court excluded the Hernandez affidavit after concluding that it contained double hearsay. The affidavit of McMath regarding the ineffective assistance of trial counsel was also excluded after Zollinger confirmed that he was not challenging the effectiveness counsel. Although Zollinger proffered Hernandez's motion for modification that was filed on July 11, 2006, the post-conviction court admitted the motion only for the purpose of

demonstrating that it had been filed. Hernandez's affidavit stated that she was "not guaranteed a sentence modification" in exchange for her testimony. Pet. Ex. A.

The post-conviction court denied Zollinger's motion for a continuance to permit Hernandez to be transported to the hearing, who was an inmate at the Rockville Correctional Facility, to testify. The post-conviction court admitted Hernandez's affidavit regarding a possible sentence modification only for the purpose of showing that it had been filed, but not for the truth of the matters asserted regarding possible sentencing leniency.

Following the hearing, the post-conviction court denied Zollinger's request for relief on October 2, 2012. In relevant part, it was determined that

> 16. The court of Appeals ... has determined that the evidence presented at Petitioner's trial was sufficient to sustain Petitioner's conviction. The Court also found that the trial court did not err in limiting the defense's cross examination of ... Hernandez and that Petitioner's sentence was appropriate. Those issues are, therefore, res judicata.
>
> 17. Notwithstanding the foregoing, ... issues waived may be properly presented in support of a claim of ineffective assistance of counsel, whereas free-standing claims of error which have been waived are not available in a post-conviction proceeding. *Timberlake,* at 597–98. In this case, the Court of Appeals rejected Petitioner's insufficiency of evidence claim and upheld Petitioner's conviction. The court also addressed Petitioner's contention that the court wrongfully limited his defense. Issues raised by those claims are, therefore, res judicata. Petitioner's complaints of ineffective assistance of trial and appellate counsel constitute a maneuver intended to avoid the finality of the Court of Appeals decision. Nevertheless, the court will address those claims.
>
> \* \* \*
>
> 20. In the instant case, Petitioner contends that he was denied the effective assistance of trial counsel because his attorney, James Stevens, deceased, failed to adequately investigate the facts and circumstances of his case in order to disclose evidence that State's witness, Tonya Hernandez, was promised favorable treatment in exchange for her testimony against Petitioner at trial.
>
> 21. The record establishes that attorney Stevens rigorously cross-examined State's witness Tonya Hernandez

with respect to her alleged motivation for testifying.... The [Court of Appeals] noted trial counsel's "intense cross-examination" of Hernandez. The court concluded that the State provided evidence sufficient to prove that Petitioner constructively possessed methamphetamine.

 22. Additionally, the matter of whether ... Hernandez was promised sentencing leniency in exchange for testifying against Petitioner was raised and addressed by the Indiana Court of Appeals in conjunction with Petitioner's argument that the trial court erred in limiting defense counsel's cross examination of Ms. Hernandez. Petitioner is merely couching this issue for reconsideration as an ineffective assistance of counsel claim. Nevertheless, Petitioner's current complaint that his trial counsel was ineffective for failing to introduce that evidence fails. The record clearly establishes that trial counsel attempted to introduce a letter from Hernandez to Petitioner in an effort to impeach Hernandez regarding her motivation for testifying, that the trial court permitted voir dire examination of ... Hernandez regarding the letter outside the presence of the jury, and that during redirect examination, trial counsel questioned Hernandez in this regard.... The Court of Appeals found that the voir dire examination of Hernandez as arranged for by the trial court, as well as her testimony, established that the State had made no promises to her, and that she was going to testify nonetheless. *Id.*

 23. Trial counsel's performance is evident from the record. Further, the Indiana Court of Appeals has concluded that it was not error to permit the testimony of Tonya Hernandez. For these reasons, it cannot be said that attorney Stevens' representation of Petitioner fell below objective standards of reasonableness based on prevailing professional norms. Moreover, given the totality of the evidence presented at trial, it is improbable that the outcome of Petitioner's trial would have been different. Thus, the court finds that trial counsel's performance was not deficient. The court further finds that Petitioner suffered no unfair prejudice as a result of the performance of trial counsel. Petitioner has failed to meet the burden of persuading this court that his trial counsel was ineffective.

* * *

 25. In the instant case, appellate counsel ... McMath raised three (3) issues on direct appeal, two (2) of which

> Petitioner raised yet again in this proceeding. This court has determined that Petitioner's trial counsel was not ineffective. Accordingly, Petitioner has not carried his burden of establishing that appellate counsel was ineffective for failing to raise that issue on direct appeal. In fact, the issues presented herein were raised and determined on appeal. Petitioner's ineffective assistance of appellate counsel claim also fails.

Zollinger v. State, No. 20A03-1211-PC-450, memo op. at 3-9 (Ind. Ct. App. July 9, 2013).

Mr. Zollinger appealed from the denial of post-conviction relief, raising two issues: (1) whether the State withheld evidence of an agreement about possible leniency in exchange for Hernandez's testimony against him; and (2) whether the post-conviction court erred in refusing to admit Hernandez's affidavit into evidence and that he should have been granted a brief continuance so an incarcerated witness could testify. (DE 8-10 at 12.) The Indiana Court of Appeals held that *res judicata* barred the first issue and that the second issue was without merit. (DE 8-12.) In seeking transfer to the Indiana Supreme Court, Zollinger argued only that the court of appeals erroneously held that his first issue was barred by *res judicata*. (DE 8-13.) The Indiana Supreme Court denied transfer on September 26, 2013. (DE 8-4.) Mr. Zollinger filed his federal petition for writ of habeas corpus raising the same issue he raised to the Indiana Supreme Court: that the court of

appeals erroneously held that *res judicata* barred his claim on post-conviction review.[1] (See DE 1-1 at 5.)

## II. ANALYSIS

Mr. Zollinger's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their

---

[1] In fact, the issue and the supporting argument raised in this habeas petition are duplicates of what he submitted to the Indiana Supreme Court. Mr. Zollinger simply copied the petition for transfer and reused it here. (See DE 1 at 3; DE 1-1.)

findings and judgments are consistent with federal law." Williams v. Taylor, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. Bell v. Cone, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. Wiggins v. Smith, 539 U.S. 510, 520 (2003).

### 1. Mr. Zollinger's res judicata claim is procedurally defaulted.

In his petition, Mr. Zollinger asserts that the Indiana Court of Appeals erroneously decided that *res judicata* barred his claim for post-conviction relief concerning an alleged undisclosed agreement between the State and Hernandez. (DE 1-1 at 4-5.) Mr. Zollinger argues that the issue of the whether the State committed a Brady violation wasn't decided on direct appeal so it should not be barred by *res judicata*. (Id. at 6.) The respondent asserts that Mr. Zollinger's claim is procedurally defaulted. (DE 8 at 10-11.) On this point the court agrees.

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004). One procedural default doctrine rooted in comity concerns precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state

courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim wasn't presented to the state courts and it's clear those courts would now find the claim procedurally barred under state law. Coleman v. Thompson, 501 U.S. 722, 735 (1991); Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. Wainwright v. Sykes, 433 U.S. 72, 90 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. Murray v. Carrier, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. House v. Bell, 547 U.S. 518, 536 (2006).

Though Mr. Zollinger raised his claim about an alleged undisclosed agreement between the State and Hernandez during his post-conviction relief proceedings (DE 8-10), the Court of Appeals of Indiana refused to consider it because it was barred by *res judicata*.

> Zollinger frames the issue in this appeal as to whether he was denied due process of law because the State improperly withheld evidence under Brady that related to Hernandez's contention that she would receive consideration of a modification of sentence in her case. More specifically, Zollinger claims that the unwritten agreement between the State and Hernandez is "material under Brady v. Maryland and the Stat's suppression of such evidence . . violated his

-10-

constitutional right to due process, warranting a new trial." Appellant's Br. P. 14.

In resolving this issue, we note that Zollinger has already presented this precise issue on direct appeal regarding the disclosure of an alleged sentence modification agreement between the State and Hernandez that he is now asserting on post-conviction relief. As the post-conviction court correctly determined, this claim is res judicata. See State v. Holmes, 728 N.E.2d 164, 168 (Ind. 2000) (holding that the doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute). Res judicata also dictates that a judgment rendered on the merits is an absolute bar to a subsequent action between the same parties on the same claim or demand. Smith v. State, 825 N.E.2d 783, 789 (Ind. 2005).

Issue preclusion, which is also referred to as collateral estoppel, precludes relitigation of issues actually and necessarily decided in an earlier litigation between the same parties. Scott v. Scott, 668 N.E.2d 691, 699 (Ind. Ct. App. 1999). Moreover, "[a] petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define the alleged error." Ben-Ysrayl, 738 N.E.2d at 258.

In Zollinger's direct appeal, we observed that his counsel subjected to Hernandez to "intense cross-examination," in an effort to discover whether she had received any promises of sentence modification or other leniency from the State in exchange for her testimony against Zollinger. Slip op. at 8-10. It was determined that Zollinger could only show that Hernandez had a "hope" of leniency, and the State had not promised her any sentence modification. Id. at 10.

Because this issue has already been decided Zollinger may not receive a second review of this claim by contending that there was a violation of due process, rather than by arguing, as he did in his first appeal, that the trial court abused its discretion and limited its cross-examination of Hernandez. Indeed, the claim as to whether the State failed to disclose a sentence modification agreement with Hernandez had already been decided adversely to him on appeal. See Godby v. State, 809 N.E.2d 48, 483-84 (Ind. Ct. App. 2004) (holding that freestanding claims of due process violations are procedurally defaulted on post-conviction because they are claims that would have been known and available on direct appeal); see also Bunch v. State, 778 N.E.2d 1285, 1289 (Ind. 2002) (observing that freestanding claims of fundamental error cannot be raised on post-conviction even if they have not been previously litigated). As a result, Zollinger's rephrasing of his claim from his direct appeal as a fundamental error

in post-conviction proceeding avails him of nothing. Therefore, Zollinger's contention is res judicata because the precise issue that he now raises was decided adversely to him on direct appeal.

State v. Zollinger, 20A03-1211-PC-450, DE 8-12 at 10-12.

The respondent argues that the Indiana Court of Appeals' ruling, based on *res judicata*, provides an adequate and independent state ground that blocks federal review. Mr. Zollinger doesn't argue that this is not an independent and adequate State law reason for dismissing this claim, nor does he provide a basis for excusing this default. Consequently, this claim is procedurally defaulted and can't provide a basis for habeas relief. *See* Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002).

That Mr. Zollinger believes the court of appeals misapplied the doctrine of *res judicata* isn't a factor here. As the Supreme Court has stated, "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2001) (citation omitted). A federal habeas court doesn't have the authority to review state-court interpretations of state law. Curtis v. Montgomery, 552 F.3d 578, 582 (7th Cir. 2009) (citation omitted). This court has no authority to decide whether the state appellate court erred when it applied state evidentiary standards. Williams v. Chrans, 894 F.2d 928, 937 (7th Cir. 1990).

### 2. Mr. Zollinger's claim that the State failed to disclose an agreement with Hernandez does not warrant habeas relief.

Procedural default aside, Mr. Zollinger's underlying claim is without merit. Even though Mr. Zollinger presented his claim only as an error in the application

of *res judicata* — which is procedurally barred — it seems clear that what he really wants is for the court to address the underlying Brady claim of whether the State withheld evidence of a promise to Hernandez of a sentence modification for her testimony against him at trial. (See DE 1-1 at 5.) Liberally construing his petition, this court will address that underlying claim.

Mr. Zollinger asserts that he was denied a fair trial because the state withheld evidence that it made a deal of leniency, unknown to him, with Hernandez in exchange for her testimony at his trial. Mr. Zollinger argues that the prosecutor's actions violated his rights under the U.S. Constitution. (DE 1-1 at 6, fn 1.) "When the government deliberately or inadvertently withholds evidence that is material and favorable to the defense, it violates the defendant's right to a fair trial, which is guaranteed by due process." Ben-Yisrayl v. Buss, 540 F.3d 542, 552 (7th Cir. 2008) (citing Brady v. Maryland, 373 U.S. 83 (1963).) The government must disclose impeaching or exculpatory information, regardless of whether it is specifically requested by the defendant. Id. This includes information about an agreement, either express or tacit, between the prosecution and a state witness. Wisehart v. Davis, 408 F.3d 321, 324 (7th Cir. 2008). The state courts never reached this issue, so the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

Mr. Zollinger's Brady claim is premised on an alleged deal the prosecutor made with Ms. Hernandez. Ms. Hernandez was arrested on the same day as Mr. Zollinger after police searched the residence they shared in Goshen. Like Mr.

Zollinger, Ms. Hernandez was charged with various drug offenses. She pleaded guilty without the benefit of a plea agreement and had been sentenced by the time she testified at Mr. Zollinger's trial.

At Mr. Zollinger's trial, Ms. Hernandez testified about Mr. Zollinger's drug dealing. On direct examination, she testified that no promises had been made by the State in exchange for her testimony. She was also questioned by defense counsel about her efforts to obtain a modification of her sentence. She acknowledged that she hoped to get a sentence modification as a result of testifying in his trial, but that it wasn't guaranteed. Defense counsel also questioned Ms. Hernandez at length outside the jury's presence about any agreement. Ms. Hernandez was clear that the deputy prosecutor made her no promises.

In the post-conviction proceedings, Mr. Zollinger submitted an affidavit from Ms. Hernandez claiming that shortly before trial the deputy prosecutor and an officer from the Goshen Police Department visited her at the jail. In the affidavit, Hernandez provides, "I was not guaranteed a sentence modification, but I understood Denise Robinson and Wade Branson's statements to mean that I would get a sentence modification later if I testified against Bill Zollinger." Mr. Zollinger appears to believe Ms. Hernandez's statements show an agreement between the State and Ms. Hernandez. In light of this evidence, Mr. Zollinger claims that the prosecutor violated Brady by failing to disclose that he had an

agreement with Hernandez. The post-conviction court rejected this affidavit on hearsay grounds.

Even if the hearsay ruling missed the mark, the affidavit wouldn't establish any agreement between the State and Ms. Hernandez. First, Ms. Hernandez's out-of-court statements wouldn't be admissible at trial. IND. R. EVID. 801. Furthermore, Ms. Hernandez's affidavit explains that there was no agreement. At most, Ms. Hernandez sets out that, based on some undisclosed statement, she understood that she would receive a sentence modification if she testified. This vague statement is different from what she repeatedly and clearly testified to at trial: that there was no agreement. Based on this evidence, this court can only conclude that there was no agreement between the State and Hernandez that needed to be disclosed, and thus no Brady violation. Abbott v. United States, 195 F.3d 946, 950 (7th Cir. 1999). Ms. Hernandez testified with the hope that the prosecutor would help her obtain a modification, but not pursuant to any specific agreement. Mr. Zollinger didn't present any admissible evidence to the contrary. Even if this claim was not procedurally defaulted, Mr. Zollinger hasn't established that a Brady violation.

### III. Certificate of Appealability

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the court must consider whether to grant Mr. Zollinger a certificate of appealability. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). As is fully explained above, Mr. Zollinger's claim is, if not procedurally defaulted, without merit. He hasn't provided any meritorious basis for excusing his default, nor has he made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue Mr. Zollinger a certificate of appealability.

For these reasons, the court:

(1) DENIES the petition (DE 1); and

(2) DECLINES to issue a certificate of appealability.

SO ORDERED.


ENTERED: August 16, 2016

                                                /s/ Robert L. Miller, Jr.
                                                Judge
                                                United State District Court